Craig A. Harbaugh (Cal Bar No. 194309)
Harbaugh Law, P.C.
360 E. 2nd Street, Suite 800
Los Angeles, California 90012
Telephone: (213) 986-8656
Email: craig@harbaugh.law

Peter Johnson (Cal Bar No. 252542)
Peter Johnson Law, P.C.
407 N. Pacific Coast Hwy, 651
Redondo Beach, California 90277
Telephone: (310) 295-1785
Facsimile: (213) 319-2907
Email: peter@peterjohnsonlaw.com

Attorneys for Defendant
Eugene Henley

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>     v.<br><br><br><br>EUGENE HENLEY<br><br>          Defendant | Case No. 2:25-cr-00211-FLA-1<br><br>**DEFENDANT EUGENE HENLEY'S NOTICE OF MOTION AND MOTION TO DISMISS COUNT ONE (RACKETEERING COUNT) PURSUANT TO FED. R. CRIM. PROC. 12(b)(3)(B); MEMORANDUM OF POINTS AND AUTHORITIES**<br>**Hearing Date**: Friday, March 13<br>**Time:** 1:30 p.m.<br>**Location:** Courtroom 6B, 6th Floor<br>**The Honorable Fernando L. Aenlle-Rocha** |

TO THE UNITED STATES AND ITS COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on March 13, 2026, at 1:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 6B, 6th Floor of the above-entitled Court, located at 350 W 1st Street, Los Angeles, CA 90012-4565, Defendant Eugene Henley, Jr. ("Mr. Henley") by and through his counsel of record, Craig A. Harbaugh and Peter Johnson, will and hereby does move this Court for an order dismissing the racketeering count (Count One) of the Indictment pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B) for failure to state an offense. In the alternative, Mr. Henley respectfully requests the Court to strike the allegations in overt acts 1–35 (Nevada kidnapping/murder), 118–126 (sex trafficking), 127-133 (donor embezzlement),134–138 (mortgage fraud), and 139–144 (SBA loan fraud) from the Indictment as irrelevant, not attributable to the enterprise, and unduly prejudicial surplusage.

Pursuant to Local Rule 7-3, undersigned counsel hereby certifies that the parties have met and conferred in a good faith effort to resolve the issues raised by this motion. Specifically, the parties engaged in meet and confer discussions on February 2, 2026, and February 4, 2026. Despite these efforts, the parties were unable to reach a resolution of the issues without Court intervention.

//
//
//
//
//
//
//
//
//
//

2

This motion is based on this Notice, the attached Memorandum of Points and Authorities, the pleadings and records on file, and such further evidence and argument as may be presented at the hearing.

DATED: February 6, 2026                    Respectfully submitted,

                                           */s/ Craig A. Harbaugh*
                                            CRAIG A. HARBAUGH

                                           */s/ Peter Johnson*
                                            PETER JOHNSON
                                            Attorneys for Eugene Henley, Jr.

3

## Table of Contents

I.    INTRODUCTION ..................................................................................1

II.   BACKGROUND – COUNT ONE (Racketeering Conspiracy)..................2

III.  LAW .................................................................................................6

A.    Motion to Dismiss -Federal Rule of Criminal Procedure 12(b)(3)(B) .....6

B.    Motion to Strike Surplusage – Federal Rule of Criminal Procedure Rule 7(d). ...............................................................................................6

C.    The RICO Statute's Requirements ..........................................................7

1.    The "Enterprise" Requirement ...............................................................7

2.    RICO Person-Enterprise Distinctness Requirement..........................................8

3.    The "Pattern of Racketeering Activity" Requirement.......................................8

IV.   ARGUMENT .......................................................................................9

A.    Count One fails to allege a racketeering "enterprise" separate from Mr. Henley himself........................................................................................9

1.    The Big U "Enterprise" Is Simply Mr. Henley Referred to by His Nickname – "Big U" ...............................................................................................9

2.    The Indictment Fails the "Formal or Practical Separability" Test. ...........................11

B.    The Indictment violates the rule in United States v. Turkette by not separately distinguishing the enterprise from the racketeering activity........12

C.    The failure to properly allege an enterprise violates due process. .........13

D.    Count One fails to allege a "pattern of racketeering activity." .............14

1.    Count One lacks relatedness among predicate acts. .....................................14

E.    Count One fails to allege continuity—closed-ended or open-ended.....15

**F.    If the Court does not dismiss Count One, it should strike the allegations in overt acts 1–35 (Nevada kidnapping/murder), 118–126 (sex trafficking), 127-133 (donor embezzlement),134–138 (mortgage fraud), and 139–144 (SBA loan fraud) from the Indictment as irrelevant, not attributable to the enterprise, and unduly prejudicial surplusage**................................................. 17

    *1.    The Court should strike overt acts 1-35 (kidnapping and murder allegations)*............ 18

**G.    The Court should strike overt acts 118–126 (transportation-for-prostitution communications).** .......................................................................20

**H.    The Court should strike overt acts 134–138 (loan application episode for Blanton).** ...........................................................................................................20

**I.    The Court Should Strike Overt Acts 139–144 (SBA EIDL filings and disbursements).** ........................................................................................................ 21

**J.    Striking these allegations will not impair the government's ability to proceed on any count.** ......................................................................................... 21

**V.    CONCLUSION**...............................................................................................22

**Table of Authorities**

**CASES**

*Allwaste, Inc. v. Hecht*, 65 F.3d 1523 (9th Cir. 1995) ............................................................. 16

*Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158 (2001)............................................ 8, 10

*Does 1-60 v. Republic Health Corp.*, 669 F. Supp. 1511 (1987).................................................7

*H.J. Inc. v. Northwest Bell Telephone Co.*, 492 U.S. 229 (1989) ....................................9, 14, 15

*McCullough v. Suter*, 757 F.2d 142 (7th Cir. 1985) ....................................................................8

*Russell v. United States*, 369 U.S. 749 (1962) ........................................................................ 13

*U.S. v. Fernandez*, 388 F.3d 1199 (9th 2004)............................................................................7

*U.S. v. Rodriguez-Gonzales*, 358 F.3d 1156 (9th Cir. 2004).................................................. 12

*United States v. Benny*, 786 F.2d 1410 (9th Cir. 1986)....................................................8, 10, 11

*United States v. Boyle*, 556 U.S. 938 (2009). .................................................................... 7, 8, 15

*United States v. Terrigno*, 838 F.2d 371 (9th Cir. 1988) ............................................................6

*United States v. Turkette, 452 U.S. 576 (1981)*....................................................................... 6, 8

**STATUTES**

18 U.S.C. § 1961 ................................................................................................................... 7, 8

18 U.S.C. § 1962 ................................................................................................................... 7, 8

**RULES**

Fed. R. Crim. P. 12 ....................................................................................................................6

Fed. R. Crim. P. 7 ......................................................................................................................6

**<u>MEMORANDUM</u>**

## I.  INTRODUCTION

The racketeering count should be dismissed under Rule 12(b)(3)(B) because the Indictment fails to allege two essential elements: (1) the existence of a cognizable racketeering enterprise, and (2) a pattern of racketeering activity. Count One of the Indictment alleges an expansive RICO conspiracy spanning roughly fifteen years and aggregating disparate categories of alleged misconduct, including homicide, kidnapping, robberies, extortions, transportation for prostitution, donor and grant fraud, SBA loan fraud, mortgage loan fraud, obstruction, and witness tampering. It offers labels and conclusions but no facts establishing an association-in-fact enterprise with a common purpose or longevity sufficient to permit the associates to pursue that purpose. Likewise, it fails to allege continuity or relationship among predicate acts that would constitute a pattern rather than isolated, disconnected events. The numerous, unrelated offenses lack the required continuity, as they are improperly grouped isolated incidents rather than acts of a structured enterprise. Therefore, Court One should be dismissed.

Alternatively, Mr. Henley respectfully requests the Court to strike the allegations in overt acts 1–35 (Nevada kidnapping/murder), 118–126 (sex trafficking), 127-133 (donor embezzlement),134–138 (mortgage fraud), and 139–144 (SBA loan fraud) from Count One as irrelevant, not attributable to the enterprise, and unduly prejudicial surplusage.

1

## II. BACKGROUND – COUNT ONE (Racketeering Conspiracy)

The Indictment pleads that the RICO conspiracy began "no later than in or around 2010" and continued to on or about March 19, 2025, alleging a "pattern of racketeering activity" comprised of multiple acts of murder, kidnapping, robbery, extortion, wire fraud, bank fraud, Hobbs Act offenses, and Mann Act offenses. (Ind. p. 5, 6 ¶ 10.) Count One alleges the "purposes" of the Big U Enterprise: enrichment via extortion, robbery, fraud, human trafficking; promoting and protecting power and reputation through intimidation and violence; leveraging media notoriety; defrauding donors and agencies; and obstructing justice. *Id.* Paragraph 10 lists objectives focused on financial enrichment, intimidation to protect and expand reputation, exploitation, and concealment of illegal activities *Id.* Paragraph 11 lists "means and methods," including allegations of violent crimes to generate income and foster fear, "check in" practices, use of purported nonprofits for enrichment, and avoiding detection. (Ind. p. 7-10 ¶ 11.)

Count One has 184 overt acts. These allegations are organized into several categories:

### 1. Allegations Related to the Death of R.W. in Nevada (Overt Acts 1–35)[1]

The Indictment alleges that in January 2021, Mr. Henley arranged for an artist, R.W., to record music in Las Vegas. (Ind. p. 12, overt act 1.) It alleges that on January

---

[1] The allegations related to the death of R.W. are only in the RICO Counts as alleged predicate acts and these allegations are not repeated in any other substantive offense in the Indictment.

2

24, 2021, Mr. Henley confronted R.W. at an Airbnb regarding a perceived lack of productivity. (Ind. p. 12, overt act 5.) The government alleges that in the early morning of January 25, 2021, Mr. Henley drove R.W. from a recording studio to the Airbnb, and then near a landfill north of Las Vegas. (Ind. p. 13, overt act 11.) R.W.'s body was subsequently discovered with multiple gunshot wounds. (Ind. p. 14, overt act 16.) The Indictment further alleges that Mr. Henley and others took steps to cover up the incident, including removing security footage from the studio and instructing witnesses not to cooperate with law enforcement. (Ind. pp. 15–17, overt acts 17-35.)

**2.  Allegations of Extortion and Robbery (Overt Acts 36–117) (Counts 2-18)**

The Indictment alleges that for several years, Mr. Henley extorted a business owner, Victim-1, for monthly payments. (Ind. p. 18, overt act 36.) It is alleged that on July 5, 2021, after Victim-1 stopped making payments, Mr. Henley directed a robbery of Victim-1's marijuana dispensary. (Ind. p. 18, overt act 37.) The government further alleges that Mr. Henley and co-defendant Robinson continued to demand "taxes" and "rent" from Victim-1 through 2023, using threats of violence to ensure payment. (Ind. pp. 20–28, overt acts 47-111.) Additionally, the Indictment alleges that on December 2, 2021, Mr. Henley and co-defendants Robinson and Martin extorted $30,000 from a club promoter, Victim-2, after Mr. Henley allegedly threatened to have his associates destroy Victim-2's business. (Ind. pp. 28–29, overt acts 112-117.)

**3.  Allegation Related to Sex Trafficking (Overt Acts 118-126) (Count 19).**

The government alleges that in November 2022, Mr. Henley paid an associate to transport women from Los Angeles to Las Vegas for the purpose of prostitution.

3

(Ind. p. 29, overt act 118.) The overt acts allege that in November 2022, Mr. Henley co-defendant Aflleje $1,000 to transport the women and later sent additional funds for the trip. (Ind. 29-30, overt acts 118, 123.)

**4. Allegation Related to Donor Fraud (Overt Acts 127-133) (Counts 25-34).**

The Indictment alleges that between 2019 and 2023, Mr. Henley diverted at least $166,900 in charitable donations intended for the nonprofit "Developing Options" into his personal bank accounts. (Ind. pp. 30-32, overt act 127-133.) It alleges that Mr. Henley solicited these charitable donations to Developing Options from NBA players, corporations, and nonprofits totaling, then transferred the funds to his personal accounts. *Id.*

**5. Allegations Related to Fraudulent Loan Application (Overt Acts 134-138) (Count 40).**

Count One also alleges that Mr. Henley and co-defendant Martin assisted an associate in submitting a fraudulent residential loan application by inflating reported income. (Ind. pp. 32–33, overt acts 134-138.) Overt acts 134–138 provide alleged communications with loan officer and co-defendant Hines about increasing a Developing Options employee's income, an internal payroll adjustment entry, a loan application by the employee, and Hines's submission for underwriting. Overt acts 134 through 138 describe co-defendant Hines advising to "put him on a salary and then increase it," a January 13, 2023 false increase to reported income of approximately $6,500 for co-defendant Blanton, his January 16, 2023 loan application claiming

$8,166.67 monthly income, and co-defendant Hines submitting the application without disclosing the plan to inflate income. *Id.*

**6. Allegations Related to PPP/SBA Fraud (Overt Acts 139-144) (Counts 20-24).**

Count One also alleges that Mr. Henley submitted fraudulent applications for pandemic-related relief (SBA loans) for his businesses, Uneek Music and Celebrity Socks. (Ind. pp. 33–34, overt acts 139-144.) Overt Acts 139-144 allege that Mr. Henley submitted false applications for these loans, falsely representing business revenues and certifying that his entities were not engaged in illegal activity, obtaining approximately $100,000 for Uneek Music and $6,000 for Celebrity Socks. *Id.* Overt acts 139 through 144 allege a June 16, 2020, EIDL application for Uneek Music with claimed 2019 revenues and costs, a June 24, 2020, signed loan agreement, disbursements of approximately $89,900 and $10,000 in June and July 2020, and a separate June 16, 2020, application for Celebrity Socks followed by a $6,000 advance on June 19, 2020. *Id.*

**7. Allegations of I*ntimidation and Obstruction (Ov*ert Acts 145–184)**

Overt acts 145 to 184 plead conduct in furtherance of the alleged racketeering conspiracy, including:

    **a. Violence and intimidation:** allegations that Mr. Henley and associates used threats, discussions of firearms, and "discipline" to maintain control and collect debts. (Ind. pp. 35–39, overt Acts 145-170.)

b. **Obstruction of justice and witness tampering:** allegations that Mr. Henley sought to influence witness conduct and encouraged false statements to law enforcement in connection with an assault investigation. (Ind. p. 39, Overt Acts 171-176.)

c. **Flight and jury tampering:** allegations that in March 2025 Mr. Henley evaded arrest and used social media posts to influence the jury pool and dissuade cooperation. (Ind. pp. 40–41, Overt Acts 177-184.

III.    **LAW**

A. **Motion to Dismiss -Federal Rule of Criminal Procedure 12(b)(3)(B)**

Federal Rule of Criminal Procedure 12(b)(3)(B)(v) authorizes defendants to move to dismiss indictments for "failure to state an offense." An indictment's "failure to recite an essential element of the charged offense is …a fatal flaw. *U.S.  v. Du Bo*, 186 F.3d 1177, 1179 (9th Cir. 1999)

B. **Motion to Strike Surplusage – Federal Rule of Criminal Procedure Rule 7(d).**

Federal Rule of Criminal Procedure 7(d) provides that "upon the defendant's motion, the court may strike surplusage from the indictment or information." Fed. R. Crim. P. 7(d).

The Ninth Circuit has established that "[t]he purpose of a motion to strike under Fed. R. Crim. P. 7(d) is to protect a defendant against prejudicial or inflammatory allegations that are neither relevant nor material to the charges." *United States v. Terrigno*, 838 F.2d 371, 373 (9th Cir. 1988). This Court has the discretion to

6

strike RICO predicate acts that are surplusage. *U.S. v. Fernandez*, 388 F.3d 1199, 1220-21 (9th 2004) (Ninth Circuit in RICO case explaining that surplusage may be subject to a motion to strike); *See also*, *Does 1-60 v. Republic Health Corp.*, 669 F. Supp. 1511, 1515 (1987) (district court striking episodes of conduct in civil RICO where acts were unrelated to the pattern of racketeering activity, finding them immaterial and impertinent.)

**C. The RICO Statute's Requirements**

The Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(d), makes it unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to knowingly and intentionally conspire to violate 18 U.S.C. § 1962(c), which prohibits conducting or participating in the conduct of an enterprise through a pattern of racketeering activity.

To establish a RICO conspiracy violation, the government must prove: (1) the existence of an "enterprise" as defined by 18 U.S.C. § 1961(4); (2) a "pattern of racketeering activity" as defined by 18 U.S.C. § 1961(5); and (3) that the defendant knowingly and intentionally conspired to conduct or participate in the conduct of the enterprise through that pattern. *United States v. Boyle*, 556 U.S. 938 (2009).

### 1. *The "Enterprise" Requirement*

Section 1961(4) defines an "enterprise" to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).

7

The Supreme Court has established that an "association-in-fact" enterprise must have at least three structural features: (1) a purpose; (2) relationships among those associated with the enterprise; and (3) longevity sufficient to permit these associates to pursue the enterprise's purpose. *Boyle*, 556 U.S. at 946. Critically, the enterprise must be separate from the racketeering activity itself. *United States v. Turkette*, 452 U.S. 576, 583 (1981). As the Supreme Court noted, "the proof used to establish these separate elements may in particular cases coalesce, proof of one does not necessarily establish the other." *Id.*

### 2. **RICO Person-Enterprise Distinctness Requirement**

The Supreme Court has held that to establish liability under § 1962(c) one must allege and prove the existence of two distinct entities: (1) a "person"; and (2) an "enterprise" that is not simply the same "person" referred to by a different name. *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161-62 (2001).

The Ninth Circuit applies a formal or practical separability test to determine whether the person-enterprise distinctness requirement is satisfied. *United States v. Benny*, 786 F.2d 1410, 1416 (9th Cir. 1986). An enterprise must be "either formally (as when there is a corporation) or practically (as when there are other people besides the proprietor working in the organization) separable from the individual." *Id.* (quoting *McCullough v. Suter*, 757 F.2d 142, 144 (7th Cir. 1985)).

### 3. **The "Pattern of Racketeering Activity" Requirement**

A "pattern of racketeering activity" requires at least two acts of racketeering activity, each within ten years of each other. 18 U.S.C. § 1961(5). The Supreme Court

8

has held that Congress intended that to prove a "pattern of racketeering activity," the government must show both "relationship" and "continuity"—that the racketeering predicates are related and that they either constitute or threaten long-term criminal activity. *H.J. Inc. v. Northwest Bell Telephone Co.*, 492 U.S. 229, 230 (1989). The Court further noted that "a series of related predicates extending over a substantial period of time" satisfies this requirement, but acts "extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement." *Id.* at 242.

With respect to "relatedness," the Supreme Court has held that "conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id.* at 236.

## IV.    ARGUMENT

**A. Count One fails to allege a racketeering "enterprise" separate from Mr. Henley himself.**

### 1. <u>*The Big U "Enterprise" Is Simply Mr. Henley Referred to by His Nickname – "Big U"*</u>

"Big U" is Mr. Henley's nickname. The Indictment alleges that the "Big U Enterprise" is a RICO "enterprise" that used Mr. Henley's reputation, influence, and connections to engage in various criminal activities. (Ind. p. 5-6, ¶ 10 a-c.) This enterprise definition is circular and tautological: Mr. Henley is charged with conducting the affairs of an enterprise that is defined by Mr. Henley's reputation. This is precisely what *Cedric Kushner* prohibits: naming the defendant "by a different name"

and calling it an enterprise. 533 U.S. at 161-62. Moreover, it is the legal equivalent of charging someone with associating with himself, which the Ninth Circuit has held "strains the imagination" and is legally impermissible. *Benny*, 786 F.2d at 1416.

A read of the Indictment reveals the absence of an enterprise that is distinct from Mr. Henley. Throughout the Indictment the government is alleging that criminal acts were undertaken for Mr. Henley's personal gain, not for the benefit of any separate enterprise. The government alleges that the murder was a retaliation for personal artistic slights and insults,[2] the extortion payments used for personal expenses,[3] and the embezzled funds deposited in his personal account, not into accounts belonging to the purported "Big U Enterprise."[4]

---

[2] *See* overt act 5 (alleged confrontation between Mr. Henley and R.W. about wasting studio time and being disrespectful)

[3] *See* Overt act 71 (alleged extortion money used for gift for Henley's wife); overt act 93 (alleged extortion money used for birthday party for Henley's wife); and overt act 81 (alleged extortion money used for money for Henley to pay EDD taxes)

[4] Overt acts 127 to 133 of Count One alleged that charitable donations intended for Developing Options were embezzled by Mr. Henley and transferred directly into Mr. Henley's personal bank account. The government does not allege that these funds were deposited into any bank account belonging to the "Big U Enterprise" or redistributed to members of the alleged enterprise. The government theme of personal benefit of embezzled funds is repeated in the criminal complaint to support the alleged tax offenses, "Of the approximately $153,000 that was given to Developing Options outside of payments from GRYD, HENLEY embezzled approximately $65,810 from the Developing Options account through bank transfers to *his own personal account*...HENLEY did not file or pay income taxes on these embezzled funds that were transferred to HENLEY's personal bank accounts and used for his own personal benefit." (Dkt. # 1, Criminal Complaint, p. 78) (Emphasis added)

10

## 2. The Indictment Fails the "Formal or Practical Separability" Test.

Under Ninth Circuit law, an enterprise must be either formally (as when there is a corporation) or practically (as when there are other people besides the proprietor working in the organization) separable from the individual. *Benny*, 786 F.2d at 1416. The alleged "Big U Enterprise" satisfies neither prong of this test.

First, the Indictment does not allege that the "Big U Enterprise" is incorporated or has any formal legal structure. The government had obvious candidates for a formally separate enterprise: Developing Options, LLC (an incorporated entity that Mr. Henley allegedly owned) and Uneek Music (a business entity). Yet the government did not name either of these entities as the RICO enterprise.

Second, the Indictment also fails to allege practical separability. Practical separability requires "other people besides the proprietor working in the organization." *Benny*, 786 F.2d at 1416. The Indictment's description of relationships is limited to characterizing co-defendant Robinson as <u>Henley</u>'s "righthand man, underboss, and enforcer" and co-defendant Martin as a "close confidant and trusted lieutenant."[5] Notably, these allegations are in the "General Allegation," not

---

[5] *See* Ind. p. 2, ¶ 2, "Defendant ROBINSON was a years-long associate and confidant <u>of defendant HENLEY</u> and served as <u>his</u> righthand man, underboss, and enforcer." (Emphasis added); *See* Ind. p. 2, ¶ 3, "Defendant MARTIN was a close confidant and trusted lieutenant <u>of defendant HENLEY</u>. (Emphasis added)

11

incorporated by the grand jury into Count One,[6] and refer to the alleged <u>personal</u> relationship that the co-defendants Martin and Robinson have or had with Mr. Henley, not their relationship to the purported "Big U Enterprise." (Ind. at p. 2) Under these circumstances, there is no practical separability between "Big U" (Mr. Henley) and "Big U Enterprise."

**B.** ***The Indictment violates the rule in United States v. Turkette by not separately distinguishing the enterprise from the racketeering activity.***

The Indictment defines the "Big U Enterprise" almost entirely through its criminal conduct. Paragraphs 11 (means and methods) and 12 (the racketeering conspiracy) describe the same conduct. (Ind. p. 7-10 ¶¶ 11-12). The Indictment provides no facts establishing that the enterprise exists independent of these criminal acts.

For example, the paragraph 11 of Count One alleges that the enterprise's "means and methods" include:

- Committing acts of violence, murder, robbery, and extortion

- Using Henley's reputation to intimidate

- Requiring individuals to "check in"

---

[6] The Ninth Circuit has made it clear that general allegations in federal criminal indictments are not automatically incorporated into specific counts if the grand jury does not specifically reference the general allegations in the count. *U.S. v. Rodriguez-Gonzales* (9th Cir. 2004) 358 F.3d 1156, 1159. (holding that each count in an information or indictment be sufficient on its own)

12

- Embezzling charitable funds

- Defrauding government agencies

- Trafficking sex workers

- Tampering with witnesses

(Ind. p. 7-10 ¶ 11.) These are not "means and methods" of conducting an enterprise; they are the racketeering acts themselves. Here, the enterprise and the racketeering activity are one and the same. This strategic choice reveals the fundamental problem: the government cannot prove that Mr. Henley conducted the affairs of the Rollin' 60s (because he may not have had that role or authority within the gang), and it cannot prove that Developing Options or Uneek Music were criminal enterprises (because they may have been legitimate businesses). So, the government invented a vague "Big U Enterprise" to avoid these proof problems. This violates the person-enterprise distinctness requirement and due process.

In essence, the government has created a legal construct for convenience and slapped a label on disparate criminal acts committed by individuals. This is precisely what *Turkette* prohibits. RICO requires proof of an actual enterprise with continuity and structure—not just a retroactive rebranding of unrelated criminal conduct to satisfy statutory elements that would otherwise go unmet.

**C. The failure to properly allege an enterprise violates due process.**

The Fifth Amendment requires that an indictment provide sufficient notice to allow the defendant to prepare a defense. *Russell v. United States*, 369 U.S. 749, 763-64 (1962). By alleging only a vague "Big U Enterprise" defined by Mr. Henley's own

reputation, the government has denied Mr. Henley the ability to prepare a meaningful defense. He cannot present evidence about the structure, operations, or membership of an entity that is defined solely by his own reputation.

**D. Count One fails to allege a "pattern of racketeering activity."**

Even if the Court were to find that the Indictment adequately alleges a distinct enterprise (which it does not), Count One should still be dismissed because the Indictment fails to allege a pattern of racketeering activity with the required continuity. The alleged predicate acts are sporadic, isolated criminal episodes, not the "regular way of doing business" of an ongoing criminal enterprise.

### 1. *Count One lacks relatedness among predicate acts.*

Count One lists predicates that vary in type, location, participants, and victims, with vague explanations of how they are connected to a common scheme. While the Ninth Circuit applies the relatedness requirement flexibly, acts must still "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics." *H.J. Inc.*, 492 U.S. at 240.

It is inadequate for the government to argue that the acts are related because they all served the purpose of "enriching Mr. Henley and the Big U Enterprise." This argument creates another circular reasoning problem that exposes the fundamental flaw in the indictment:

- The acts are related because they served the enterprises goals;

- The enterprise is defined by Mr. Henley's reputation;

14

- Therefore, the acts are related only because they were alleged to be committed by Mr. Henley.

This is insufficient. The acts must be related to an enterprise's goals—but without a distinct enterprise with identifiable goals and operations, there can be no "enterprise goals" to which the acts relate. The government's relatedness argument depends on the existence of a distinct enterprise, which the Indictment fails to allege.

Moreover, if the government's theory were correct—that acts are related merely because they were committed by the same person or people—then every multi-count indictment would automatically satisfy RICO's pattern requirement. This would render the relatedness requirement meaningless and would transform RICO into a general federal criminal code, contrary to congressional intent.

### E. Count One fails to allege continuity—closed-ended or open-ended.

Continuity requires either a closed period of repeated conduct or a threat of future criminal conduct. *H.J. Inc.*, 492 U.S. at 241-42. Here, the pattern element is not satisfied.

The Indictment alleges that the conspiracy began "no later than in or around 2010" and continued "to on or about March 19, 2025." However, the Indictment provides no facts from 2010 to 2019. This nine-year gap between alleged enterprise formation (2010) and first predicate act (2019) demonstrates the "Big U Enterprise" lacks the continuity and longevity required by *Boyle*.

15

The Indictment also does not allege continuous organizational existence during the period of 2019 to 2025. Instead, it describes discrete criminal incidents scattered across this timeframe:

- A murder in January 2021

- Robberies and extortions occurring sporadically between 2021 and 2023

- Fraud schemes involving charitable donations between 2019 and 2023

These are not "a series of related predicate acts" but rather sporadic criminal episodes occurring at different times, involving different victims, and serving different purposes. The mere fact that they occurred over a six-year period does not establish closed-ended continuity. The Ninth Circuit has emphasized that continuity requires more than just temporal duration; it requires repeated conduct that demonstrates an ongoing pattern. *Allwaste, Inc. v. Hecht*, 65 F.3d 1523, 1527-29 (9th Cir. 1995).

The Indictment also does not allege open-ended continuity. Open-ended continuity requires "past conduct that by its nature projects into the future with a threat of repetition" or acts that are "part of an ongoing entity's regular way of doing business." *Id.* The Indictment fails to allege either. The alleged acts do not by their nature project into the future. The murder is a completed event. The human trafficking operation allegedly ended in 2020. The wire fraud and bank fraud schemes are alleged to be specific instances of fraud, not ongoing schemes. None of these acts, by their nature, threaten continued criminality and the events are too sporadic and disjoined to be part of an entity's regular way of doing business.

16

The Indictment also alleges that the conspiracy continued "to on or about March 19, 2025," the date of Mr. Henley's arrest. However, the Indictment provides no facts suggesting that the alleged criminal activity would have continued absent law enforcement intervention. The most recent predicate acts alleged are:

- Extortion of Victim-1: March 29, 2023

- Charitable donation fraud: January 3, 2023

- Mortgage fraud: January 16, 2023

These acts occurred more than a year before Mr. Henley's arrest. The Indictment provides no facts suggesting that Mr. Henley was planning to continue these schemes past the above dates. This failure to allege facts showing that the alleged "association" had continuity or organizational longevity beyond the limited duration of unrelated incidents is fatal at the pleading stage under Rule 12(b)(3)(B).

**F. If the Court does not dismiss Count One, it should strike the allegations in overt acts 1–35 (Nevada kidnapping/murder), 118–126 (sex trafficking), 127-133 (donor embezzlement),134–138 (mortgage fraud), and 139–144 (SBA loan fraud) from the Indictment as irrelevant, not attributable to the enterprise, and unduly prejudicial surplusage.**

As discussed below, the challenged overt acts are discrete, self-contained episodes—kidnapping and murder (1-35) transportation-for-prostitution communications (118–126), a brief, one-off loan-application episode for a third party (134–138), and stand-alone SBA loan filings and disbursements relating to separate entities (139–144). They do not further any alleged enterprise objective distinct from

17

the government's already-charged predicates, do not establish the pattern of racketeering the government must prove, and invite undue prejudice by suggesting propensity and bad character. Therefore, the Court should strike these overt acts as surplusage.

1. **_The Court should strike overt acts 1-35 (kidnapping and murder allegations)_**

    i. ***Overt Acts 1–16 (R.W.'s trip, recording, movements, and death) and Overt Acts 17–35 (post hoc communications and alleged concealment) lack a nexus to the enterprise's enumerated goals.***

To serve as overt acts "in furtherance" of the RICO conspiracy, the allegations must tend to prove agreement to conduct enterprise affairs through a pattern of racketeering and the advancement of enterprise objectives. Count One's description of the R.W. episode does not tie the conduct to enterprise enrichment, control, or protection; it presents a personal affront narrative. The pleaded purposes/means do not convert personal retaliation over a song into conspiracy advancement. Because these allegations do not "make a fact of consequence" more or less probable on enterprise agreement or purposes, they are immaterial and should be stricken.

    ii. ***The government's own allegations frame the R.W. episode as personal disrespect tied to a song, not an enterprise objective.***

The Indictment asserts that Mr. Henley arranged studio time for R.W., confronted him about "lack of production," and that acts around January 24–25, 2021

18

culminated in R.W.'s death. Critically, the pleaded narrative ties the confrontation and alleged violence to perceived <u>personal</u> disrespect associated with music production and a song, rather than to extortion, robbery, fraud, or other stated enterprise objectives. Overt act 5 alleges Mr. Henley asked R.W. "why [he] had not been at the studio the previous day, wasting studio time and disrespecting Uneek Music and the Big U Enterprise." (Ind. pp. 12, overt act 5). Overt acts 6–16 describe movements to and from the studio and Airbnb, the recording of a song, and phone status/location details around the time frame, culminating in R.W.'s body being discovered on January 25, 2021, with multiple gunshot wounds to the head (Ind. pp. 12-16, overt acts 6-16).

The government does not allege that the R.W. killing advanced extortion revenues, secured enterprise territory, protected an ongoing fraud, or executed any listed enterprise objective. Rather, its theory—as pleaded—rests on affront and insult tied to a creative dispute and perceived disrespect.

### iii.    Venue for the murder and kidnapping allegation is Nevada, not the Central District of California.

The Indictment charges a murder alleged to have occurred in Nevada but provides a questionable federal jurisdictional hook or venue basis for prosecution in the Central District of California. Absent the tenuous RICO link, the mere inclusion of the homicide within a broader federal case does not confer jurisdiction where the offense is a state-law killing lacking an identified federal element, nexus, or statutory basis for federal prosecution. Venue in Los Angeles is likewise unsupported because

19

the essential conduct elements of the murder are alleged to have occurred in Nevada. Without clear allegations establishing federal subject-matter jurisdiction and proper venue, the overt acts should be stricken.

**G. The Court should strike overt acts 118–126 (transportation-for-prostitution communications).**

The prostitution-related calls involve *ad hoc* travel and payments surrounding alleged pandering; they are not tied to any extortion victim, robbery plan, or nonprofit/grant fraud mechanism, nor are they alleged to be used to extract funds to support other enterprise activities. (Ind. pp. 29-30, overt acts 118-129.) In the absence of a linkage to the enterprise's objectives, these acts are immaterial to the charged pattern and risk confusing the issues with inflammatory sexual content.

**H. The Court should strike overt acts 134–138 (loan application episode for Blanton).**

The loan-application allegations concern a one-time attempt to qualify an employee for a residential loan by adjusting reported income. The Indictment alleges that in January 2023 the reported income was increased by approximately $6,500 for loan qualification and that a loan application reflecting $8,166.67 monthly income was submitted for underwriting There is no allegation that this isolated episode constituted an enterprise revenue stream, furthered extortion, or was part of an ongoing loan-fraud scheme integral to the enterprise. Detached from the enterprise's robbery and extortionate themes, these acts are surplusage.

**I.  The Court Should Strike Overt Acts 139–144 (SBA EIDL filings and disbursements).**

The SBA matters predate many asserted enterprise activities and involve pandemic-era loans to business entities, not donors or extortion victims. The EIDL acts occurred in June–July 2020 and involve Uneek Music and Celebrity Socks, including certifications and disbursements described by date and amount. The Indictment does not connect these loans to enterprise operations, extortion proceeds, or any alleged enterprise objective beyond generic "fraud."

**J.  Striking these allegations will not impair the government's ability to proceed on any count.**

Striking surplusage does not dismiss any count. The government may still pursue the counts that encapsulate these discrete episodes where properly charged, without leveraging them to broaden the enterprise narrative. Counts Twenty through Twenty-Four address the EIDL transmissions; Count Forty addresses the mortgage-lending scheme; Count Nineteen addresses transportation for prostitution. Removing the same subject matter from the enterprise overt-acts list eliminates unfair prejudice while preserving the government's pleaded theories in the counts where they belong.

//

//

//

//

//

21

## V. CONCLUSION

For the foregoing reasons, the Court should:

1.  Dismiss the racketeering count pursuant to Rule 12(b)(3)(B) for failure to state an offense, because the Indictment does not adequately allege a racketeering enterprise or a pattern of racketeering activity;

2.  In the alternative, the Court should strike overt acts 1-35, 118–126, 134–138, and 139–144 from the Indictment as immaterial, irrelevant, and prejudicial surplusage under Rule 7(d).


DATED: February 6, 2026              Respectfully submitted,

                                     */s/ Craig A. Harbaugh*
                                     CRAIG A. HARBAUGH

                                     */s/ Peter Johnson*
                                     PETER JOHNSON
                                     Attorneys for Eugene Henley, Jr.


The undersigned, counsel of record for Mr. Henley, certifies that this brief contains 5,980 words, which complies with the word limit of L.R. 11-6.1.


DATED: February 6, 2026              Respectfully submitted,

                                     */s/ Craig A. Harbaugh*
                                     CRAIG A. HARBAUGH

                                     */s/ Peter Johnson*
                                     PETER JOHNSON
                                     Attorneys for Eugene Henley, Jr.