TODD BLANCHE
Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
JENNIFER L. WAIER
Chief Assistant United States Attorney
Chief, Criminal Division
KEVIN J. BUTLER (Cal. Bar No. 329129)
Chief, Major Crimes Section
JENA A. MACCABE (Cal. Bar No. 316637)
Deputy Chief, Major Crimes Section
Assistant United States Attorneys
1300 United States Courthouse
312 North Spring Street
Los Angeles, California 90012
Telephone: (213) 894-6495/5046
Facsimile: (213) 894-0141
E-mail: kevin.butler2@usdoj.gov
jena.maccabe@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>EUGENE HENLEY, JR.,<br>aka "Big U,"<br>aka "Unc,"<br>aka "Draws,"<br>aka "Hannibal,"<br>aka "Hannibal Muhammad,"<br>aka "Anybody Killa,"<br>aka "Dave Austin,"<br><br>Defendant. | No. 2:25-CR-00211-FLA-1<br><br>GOVERNMENT'S OPPOSITION TO DEFENDANT EUGENE HENLEY, JR.'S EX PARTE APPLICATION TO CONTINUE TRIAL TO OCTOBER 19, 2027, VACATE ALL SCHEDULED HEARINGS, AND EXCLUDE TIME (DKT. 455) |

Plaintiff United States of America, by and through its counsel of record, the First Assistant United States Attorney for the Central District of California and Assistant United States Attorneys Kevin J. Butler and Jena A. MacCabe, hereby files its opposition to defendant Eugene Henley, Jr.'s Ex Parte Application to Continue Trial to

October 19, 2027, Vacate All Scheduled Hearings, Set an Early Status Conference, and Exclude Time Under the Speedy Trial Act (Dkt. 455).

This opposition is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: October 26, 2026

Respectfully submitted,

TODD BLANCHE
Attorney General

BILAL A. ESSAYLI
First Assistant United States Attorney

JENNIFER L. WAIER
Chief Assistant United States Attorney & Chief, Criminal Division

/s/
KEVIN J. BUTLER
JENA A. MACCABE
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**TABLE OF CONTENTS**


DESCRIPTION PAGE

I. INTRODUCTION....................................................1

II. STATEMENT OF FACTS..............................................3

A. Henley Has Been Detained Since March 2025 and Purports to Oppose Every Continuance.................................3

B. The Defense Has Held the Government's Trial Roadmap for Seven Months................................................5

C. The Witnesses and Victims.................................5

D. The Government's Trial Calendar...........................6

III. LEGAL STANDARD..................................................7

IV. ARGUMENT.........................................................8

A. Defendant Has Not Joined His Counsel's Request, and His Repeated Assertion of the Speedy Trial Right Weighs Heavily Against Eight More Months..................8

B. The Public, the Victims, and the Witnesses Have Interests the Application Never Mentions.................10

1. Witness safety......................................11

2. Victims' rights.....................................12

3. Material witnesses, in-custody witnesses, and fifty witnesses overall..............................12

C. The Flynt Factors Do Not Support an Eight-Month Continuance..............................................13

1. The asserted need has already been accounted for....13

2. The application does not show that eight months is what the work requires............................16

3. A continuance would impose real costs on the Court, the government, and its witnesses............16

4. Defendant has not shown prejudice from denial -- and he has told the Court that delay is the prejudice...............................................18

D. The Court Should Not Vacate the Motion Schedule in Any Event....................................................18

E. Alternatively, Any Relief Should Be Narrow and

Supported by Specific Findings..........................19

V. CONCLUSION..............................................19

# TABLE OF AUTHORITIES

DESCRIPTION PAGE

Cases

Barker v. Wingo,
407 U.S. 514 (1972) .......... 10, 11
Mission Power Eng'g Co. v. Cont'l Cas. Co.,
883 F. Supp. 488 (C.D. Cal. 1995) .......... 2
Morris v. Slappy,
461 U.S. 1 (1983) .......... 7, 12, 18
Ungar v. Sarafite,
376 U.S. 575 (1964) .......... 7, 18
United States v. Flynt,
756 F.2d 1352 (9th Cir. 1985) .......... 2, 7, 13, 18
United States v. Kloehn,
620 F.3d 1122 (9th Cir. 2010) .......... 7
United States v. Lewis,
611 F.3d 1172 (9th Cir. 2010) .......... 8
United States v. Lloyd,
125 F.3d 1263 (9th Cir. 1997) .......... passim
United States v. Schaefer,
13 F.4th 875 (9th Cir. 2021) .......... 3, 10
Vermont v. Brillon,
556 U.S. 81 (2009) .......... 10, 14, 19
Zedner v. United States,
547 U.S. 489 (2006) .......... 7

Statutes

18 U.S.C. § 3144 .......... 12
18 U.S.C. § 3161(h)(7) .......... 3, 7, 9, 10
18 U.S.C. § 3771 .......... 1, 6, 11, 12

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Defendant Eugene Henley, Jr. ("defendant") has been detained since March 2025. He has demanded a speedy trial since his arrest. (See, e.g., Dkt. 118 at 2 n.1; Dkt. 166 at 2, 6; Dkt. 328 at 1.) When his codefendants moved last April to push trial from May 2026 to February 2027, defendant personally objected, as did the government; this Court noted that he "opposes any further continuance of the trial date, as he has throughout the action." (Dkt. 329 at 2.) At his arraignment on the Second Superseding Indictment, he told the Court that his speedy trial rights had already been violated. Now, his newly appointed counsel ask for eight more months -- and nowhere does the application say that defendant agrees. The most it offers is that defendant "understands defense counsel's request" (Brown Decl. ¶ 22), which is reminiscent of what defendant said in April, while nevertheless objecting.

The application should be denied for four broad, independent reasons. First, defendant has not joined the request. When a defendant "repeatedly asserts his speedy trial rights and makes clear that he does not want the continuance that his lawyer has requested," the Ninth Circuit requires "a far more probing inquiry" before an ends-of-justice continuance may issue -- and in that case, it reversed the convictions and noted that dismissal could be with prejudice on remand. United States v. Lloyd, 125 F.3d 1263, 1270 (9th Cir. 1997). Second, the application never mentions the people who bear the cost of delay: the family of a man murdered almost six years ago, who have a statutory right to "proceedings free from unreasonable delay," 18 U.S.C. § 3771(a)(7); a cooperating witness

whom defendant is charged with targeting from his jail cell after the last continuance; a material witness held to court-ordered conditions since before the last continuance; and at least five in-custody witnesses. Third, the Flynt factors do not support the request. The defense has held the government's exhibit list since March 25, 2026, and its witness list the same timeframe. This Court already found the case complex and gave the defense ten additional months on that basis. (Dkt. 329 at 3.) While counsel's two paralegals "will be leaving the defense team for other positions," an experienced capital-case paralegal will be onboarded in "an additional week." (Brown Decl. ¶¶ 16-17.) And the other obligations counsel describe were known to them on the day they accepted this appointment, and counsel swears they have "arranged the work in this case around them." (Id. ¶ 18.) Fourth, the government has organized roughly fifty witnesses, and a trial calendar that runs through April, May, June, and July 2027, around the February 16 date this Court set six months ago. Presumably, the seven other defense attorneys, unknown number of paralegals and investigators, and the Court have done the same with their schedules.

Even if the Court were inclined to give new counsel some additional time, nothing in the application justifies vacating every hearing on calendar. Those motions are briefed. They should be heard.[1] Trial should proceed on February 16, 2027. The government

---

[1] Under the Court's Standing Order, any opposition to an ex parte application is due within twenty-four hours of service. The government files this opposition within that period -- excluding the weekend -- and respectfully requests the opportunity to be heard at the soonest possible date with defendant personally present. The government agrees with the ex parte nature of this filing in that it believes immediate resolution of this request is in the best interest of all parties, litigants, witnesses, and the Court.

also respectfully asks this Court to set a status conference for the parties subject to this briefing this Wednesday, October 28, 2026, the date currently set for the parties' next oral argument.

## II. STATEMENT OF FACTS

### A. Defendant Henley Has Been Detained Since March 2025 and Purports to Oppose Every Continuance

The grand jury returned the original indictment in March 2025. (Dkt. 81.) Defendant has been detained since his arrest that month. (Dkt. 117 (detention order of April 22, 2025).)

On May 9, 2025, the Court approved a stipulation, as modified, continuing trial to May 5, 2026. (Dkts. 122-123.) Defendant did not join that stipulation. Through his then-retained counsel, he "object[ed] to any waiver of his right to a speedy trial" and "to any continuances." (Dkt. 118 at 2 n.1, 4; see also id. at 11 ("Defendant HENLEY objects to continuing the trial in this matter.").) The stipulating parties relied instead on 18 U.S.C. § 3161(h)(6) to exclude time as to him. (Id. at 11.) As the government noted in April, defendant's primary reason for later relieving that counsel was counsel's acquiescence in the continued trial date. (Dkt. 310 at 15.)

On December 15, 2025, codefendants Sylvester Robinson and Mark Martin moved to continue the May 5, 2026 trial date. (Dkt. 159.) The Court denied the motion. (Dkt. 166.) It found that defendant "opposes any further continuance of the trial date, as he has throughout the action," that he "stated at the Motion Hearing that he was '100% opposed' to a continuance," and that he had written to the Court "reiterating multiple times his steadfast opposition to a continuance." (Id. at 2, 6 (citing Dkt. 162).) The Court also noted

that "Henley's two CJA attorneys, who expressed concern about their state of readiness for trial in May 2026, made clear they were not moving for a continuance over their client's objection," and that defendant "has made clear he 'prioritize[s] his trial date over constitutionally adequate representation.'" (Id. at 6 (quoting United States v. Schaefer, 13 F.4th 875, 891 (9th Cir. 2021)).)

On February 6 and 7, 2026, defendant and his codefendants collectively filed 16 pretrial motions. (See Dkts. 170-189.) Two weeks later, the government opposed each motion. (See Dkts. 224-230.) The following week, the defense filed some replies,[2] a request to reassign some motions to another judge, and a new motion styled as a "reply" to a joinder to an earlier motion. (See Dkts. 239-246.) Within days, the government filed a response to the reassignment request and an application to strike the new motion. (Dkts. 247-248.) More codefendant joinders followed. (Dkts. 258-259.) On March 12, 2026, codefendant Williams's counsel moved to withdraw, which the Court set for hearing on April 17. (Dkt. 260-261.) Then, on March 27, 2026, the government filed a single motion in limine, and defendant and his codefendants collectively filed six motions in limine -- half of which were oversized -- and a defense request for jury procedures. (See Dkts. 264-274.) A few days later, the Court set all pretrial motions to be heard on April 17 and motions in

[2] Codefendant Armani Aflleje did not file replies to her motion to suppress her interview statements, motion to sever her trial from her codefendants', and motion for bill of particulars. Codefendant Termaine Ashley Williams did not bother to file a reply to his motion to sever his trial from his codefendants'. Codefendant Robinson did not file a reply to his motion to dismiss. Defendant did not file replies to any of his motions to dismiss and his motion to strike.

limine to be heard at the pretrial conference on April 22. (Dkts. 275-276.) Another codefendant joinder followed. (Dkt. 277.)

Next, the parties opposed the motions in limine. (Dkts. 281-282, 298, 304-305, 307-308.) The government arrested a material witness. (Dkt. 292.) The government also provided early disclosures of its witness and exhibit lists, expert notices, Federal Rule of Evidence 404(b) notice, and proposed jury instructions and verdict forms.

Only after all that, on April 10, 2026, did codefendants Robinson and Martin, along with defendant's then-counsel, apply ex parte to continue the May 5, 2026 trial to February 16, 2027. (Dkt. 301.) The government opposed. (Dkt. 310.) Then, on April 15, 2026, the Court held a hearing on and granted codefendant Williams's counsel's motion to withdraw. (Dkt. 327.) Two days later, the Court continued the trial. (Dkt. 328.) In its written order, the Court found that the case was "sufficiently complex, due to the number of defendants and the nature of the prosecution, including the volume of discovery that has been and is expected to be produced," and that adequate preparation within the Speedy Trial Act's ordinary limits was unreasonable to expect. (Dkt. 329 at 3.) The Court relied on the government's March 25, 2026 "Preliminary Exhibit List" of "approximately 311 exhibits," and on a discovery count that already excluded "documents the government has indicated it will not offer during its case-in-chief at trial." (Id. at 2.) And the Court recorded defendant's position: he "opposes any further continuance of the trial date, as he has throughout the action." (Id.) The minutes reflect that the application was granted "over the objection of defendant Eugene Henely, Jr.," and that the codefendants who

agreed to the continuance were "questioned, waive[d] speedy trial time and agree[d] with the new trial date." (Dkt. 328 at 1.) Defendant did not.

The continuance inspired more filings. On April 27, 2026, codefendant Robinson applied to modify his release conditions. (Dkt. 332.) On May 13, 2026, defendant filed an oversized supplemental motion to compel discovery. (See Dkts. 336-337.) On July 15, 2026, codefendant Aflleje filed a motion to dismiss Count 19. (Dkt. 371.) She later moved to reassign the motion to another judge. (Dkt. 432.) Defendant filed a supplement to his motion to suppress evidence from a cell-site warrant. (Dkt. 376.) Defendant and codefendant Aflleje filed supplements to the motion to suppress the wiretap. (See Dkts. 393-394.) More codefendant joinders followed. (Dkts. 395-396, 416.)

On July 29, 2026, the grand jury returned the Second Superseding Indictment. (Dkt. 377.) Counts 47 through 50 are new. As the defense itself describes them, they "allege solicitation and attempted witness tampering on and before June 10, 2026, while Mr. Henley was detained." (App. at 5 (citing Dkt. 377 at 74-75).) That conduct occurred less than three months after the government served its witness and exhibit lists.

Defendant was arraigned on the Second Superseding Indictment in August 2026 and pleaded not guilty. (Dkts. 404, 424.) At that hearing, defendant purportedly stated that his speedy trial rights had been violated. The February 16, 2027 trial date did not move.

Defendant's prior appointed counsel were relieved on September 17, 2026. (Dkts. 436-440.) Present counsel were appointed on September 25, 2026. (Dkt. 447.) At new counsel's request, the hearing on the Title III suppression motions was continued from

October 6 to November 2, 2026. (Dkts. 451, 452.) As the application acknowledges, that order "left the trial date unchanged." (App. at 6.)

On October 16, 2026, defense counsel proposed continuing trial to February 2028. On October 19, the government stated it opposed. Defense counsel filed this application to continue trial to October 2027. Rather than ask to replace Wednesday's in-limine hearing with a hearing on this application, counsel asks to vacate that hearing and all other hearings in exchange for setting a status conference sometime in the next month.

### B. The Defense Has Held the Government's Trial Roadmap for at Least Seven Months

The government served its preliminary exhibit list on March 25, 2026. (Dkt. 329 at 2.) It served its early witness list, identifying approximately forty civilian and law enforcement witnesses on March 9.[3] (Dkt. 310 at 12.) The application concedes the point: "The government's exhibit list alone identifies roughly 200 recorded calls." (App. at 7; Brown Decl. ¶ 7.) Those lists have been in the defense's hands for almost seven months -- through the tenure of prior counsel, through the transfer of the file, and through the four weeks present counsel have been on the case.

In addition, the government sent its proposed jury instructions, verdict form, and trial memorandum in the first half of April 2026.

---

[3] The government did so based on written representations from all counsel who subsequently moved for a continuance that they would not do so. Current moving counsel was obviously not privy to those conversations or representations, and the government assigns no fault whatsoever to current counsel. This note is merely to highlight the concern the government has with the firmness of any dates in this case.

The government had produced its expert and Rule 404(b) notices the prior month.

Those disclosures confirmed the government's case. It is what defendant has known since receiving the complaint and original indictment in March 2025, with the exception of his new crimes in custody.

**C. The Witnesses and Victims**

The government anticipates calling approximately fifty witnesses at trial. They include:

- At least one material witness who has been subject to court-ordered conditions of release since April 2026, including the surrender of a passport. (Dkts. 293-299, 311.)
- At least five witnesses who are in custody, whose production at trial requires writs, coordination with the Bureau of Prisons and state or county facilities, and attention to release and transfer dates.
- At least one witness requiring international travel. Many more requiring interstate travel.
- Victim-1, a victim of the charged enterprise, and whom Counts 47 through 50 allege defendant sought to tamper with from custody. (Dkt. 377 at 74-75.)
- Witnesses from Nevada, including North Las Vegas Police Department personnel, whose travel the government has begun arranging around the February 16 date.

Count One carries a special sentencing allegation of premeditated murder under Nevada law. (Dkt. 377 at 45, ¶ 14.) The victim, R.W., was killed in January 2021 -- nearly six years ago.

His family members are crime victims under the Crime Victims' Rights Act. 18 U.S.C. § 3771(e)(2)(B). Almost every other count involves other victims with their own rights. Id. § 3771(e)(2)(A).

### D. The Government's Trial Calendar

The government's trial team has built its 2027 calendar around the February 16 date. It is committed to trials in other matters in March, April, May, June, and July 2027, at least: United States v. Mestanza, et al., 25-CR-198-KK, March 22, 2027 (multi-defendant, multi-series, over $100 million loss to multiple victims); United States v. Grillo; 26-CR-146-GW, April 6, 2027 (attempted kidnapping); United States v. Gonzalez, et al., 26-CR-114-SVW, April 20, 2027 (multi-defendant RICO); United States v. Wimbley Jr., 24-CR-559-MCS, May 4, 2026 (armed robbery); United States v. Sanchez, et al., 26-CR-39-JVS (multi-defendant robbery series); United States v. Richardson, et al., 25-CR-359-MCS, June 1, 2026 (multiple VICAR murders); United States v. Turner, et al., 25-CR-462-CV, June 15, 2026 (multi-defendant fraud, attempted murder, and obstruction).[4]

## III. LEGAL STANDARD

"The decision to grant or deny a requested continuance lies within the broad discretion of the district court." United States v. Flynt, 756 F.2d 1352, 1358 (9th Cir. 1985). The Supreme Court has explained why. Trial courts face the problem "of assembling the witnesses, lawyers, and jurors at the same place at the same time, and this burden counsels against continuances except for compelling

[4] Counsel has only listed trial dates in which: (1) at least one defendant is detained and/or refusing to waive time; and (2) a plea has already been rejected. In multiple instances, the presiding courts have affirmatively stated that no further continuances will be granted.

reasons." Morris v. Slappy, 461 U.S. 1, 11 (1983). "Consequently, broad discretion must be granted trial courts on matters of continuances; only an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay' violates the right to the assistance of counsel." Id. at 11-12 (quoting Ungar v. Sarafite, 376 U.S. 575, 589 (1964)). The Ninth Circuit weighs the movant's diligence, the likelihood that the continuance would serve its purpose, the inconvenience to the court, the opposing party, and its witnesses, and the harm the movant would suffer from denial. Flynt, 756 F.2d at 1358-59. The movant "must show at a minimum that he has suffered prejudice." Id. at 1359. This Court applies the same factors. (Dkt. 166 at 3-4 (citing United States v. Kloehn, 620 F.3d 1122, 1127 (9th Cir. 2010)).)

The Speedy Trial Act adds a second, independent constraint. A continuance may toll the clock only if the Court finds, on the record, "that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A). The Act "was designed with the public interest firmly in mind." Zedner v. United States, 547 U.S. 489, 501 (2006). And the Court may not simply credit one lawyer's account of the need for delay; it "must conduct an appropriate inquiry to determine whether the various parties actually want and need a continuance, how long a delay is actually required, [and] what adjustments can be made with respect to the trial calendars or other plans of counsel." Lloyd, 125 F.3d at 1269; accord United States v. Lewis, 611 F.3d 1172, 1176 (9th Cir. 2010).

## IV. ARGUMENT

### A. Defendant Has Not Explicitly Joined His Counsel's Request, and His Repeated Assertion of the Speedy Trial Right Weighs Heavily Against Eight More Months

The application asks the Court to exclude eight months from the speedy trial clock of a detained defendant. What is completely unclear is whether or not defendant desires this -- the application only states that "Counsel has discussed the need for a continuance with Mr. Henley, and he understands defense counsel's request." (App. at 3; see Brown Decl. ¶ 22 ("He understands defense counsel's request.").)

Understanding is not agreement. And the record of what defendant actually desires points the other way:

- He objected, through retained counsel, to the May 2025 stipulation that moved trial to May 2026. (Dkt. 118 at 2 n.1, 4, 11.) He appeared to fire that counsel for agreeing to that continuance.
- In January 2026, he told the Court he was "100% opposed" to a continuance, and wrote to the Court "reiterating multiple times his steadfast opposition." (Dkt. 166 at 6; see Dkt. 162.)
- He opposed the April 2026 request personally, and the Court found that he had opposed continuances "throughout the action." (Dkt. 329 at 2.) The minutes confirm the continuance was granted "over the objection of defendant Eugene Henely, Jr." (Dkt. 328 at 1.)
- At his August 2026 arraignment, he stated that his speedy trial rights had been violated.

- He has not, in the four weeks since new counsel's appointment, filed anything withdrawing that position, and the application does not claim he has.

Lloyd addresses exactly this situation. There, a newly appointed defense lawyer moved to continue trial, citing the need to review the case materials and a scheduled vacation. 125 F.3d at 1265-66. The defendant objected. The district court granted the continuance on a continuity-of-counsel rationale. The Ninth Circuit held the delay was not excludable and dismissed the indictment. It explained that "[w]hen, as here, the defendant repeatedly asserts his speedy trial rights and makes clear that he does not want the continuance that his lawyer has requested, the district court must at a minimum conduct a far more probing inquiry into the continuity of counsel question." Id. at 1270. It added that "[t]here must . . . be some substance to the prior attorney-client relationship before its continuity can be of significance." Id. The application invokes "[c]ontinuity and effective preparation" under § 3161(h)(7)(B)(iv) for an attorney-client relationship that was four weeks old when it was filed. (App. at 11.)

The April continuance does not suggest otherwise. There, two codefendants moved, and the Court found that "any delay as to defendant Henley is reasonable as he is joined for trial with codefendants as to whom the time for trial has not run and no motion for severance has been granted." (Dkt. 329 at 3); see 18 U.S.C. § 3161(h)(6). Here, no codefendant has moved. The only party seeking delay is counsel for the one detained defendant who has objected to every continuance in this case.

The Sixth Amendment points the same direction. A defendant's "assertion of his speedy trial right . . . is entitled to strong evidentiary weight." Barker v. Wingo, 407 U.S. 514, 531-32 (1972). Defendant has asserted it at every turn. This Court has already found that he "prioritize[s] his trial date over constitutionally adequate representation." (Dkt. 166 at 6 (quoting Schaefer, 13 F.4th at 891).)

At a minimum, then, the Court should not grant any continuance without first hearing from defendant himself, on the record, whether he wants one.[5] If he does not, the application should be denied on that basis alone.

**B. The Application Ignores the Public, Victims, and Witnesses' Interests**

The application weighs defense counsel's desire for more time against nothing. The Speedy Trial Act does not permit that. It requires the Court to weigh "the best interest of the public" along with the defendant's. 18 U.S.C. § 3161(h)(7)(A). "[T]here is a societal interest in providing a speedy trial which exists separate from, and at times in opposition to, the interests of the accused." Barker, 407 U.S. at 519. Three sets of interests stand on the other side of this scale, not to mention any defendant's potential objection.

[5] Should the Court grant any continuance, the government requests express findings that the resulting delay was sought by the defense and is attributable to the defendant. "[D]elay caused by the defendant's counsel is also charged against the defendant," and "[t]he same principle applies whether counsel is privately retained or publicly assigned." Brillon, 556 U.S. at 90-91. Nothing in this opposition concedes that any portion of the time since indictment is non-excludable.

1. Witness safety

Since the outset of this case, defendant has been facing allegations of witness tampering and obstruction of justice. (See, e.g., Compl. ¶¶ 87-90, 124-125, 162, 166, Dkt. 1.) Defendant is now charged with soliciting and attempting to tamper with a witness while detained -- conduct alleged to have occurred on and before June 10, 2026, less than three months after the government served its witness and exhibit lists and less than two months after the Court granted the trial continuance. (Dkt. 377 at 74-75.) The defense lists that very charge as a reason to wait longer. (App. at 9 (citing the need to "investigate the new allegations in Counts 47 through 50").) But delay is not neutral when the charge is witness tampering.

Every additional month is another month in which identified witnesses -- including five who are themselves in custody -- remain exposed before they testify. That exposure is not hypothetical. One cooperating witness's identity has been spread on social media, and his home was vandalized, burglarized, and spray-painted with the word "rat." (Dkt. 310 at 13 n.4.) The Supreme Court has recognized the dynamic: "As the time between the commission of the crime and trial lengthens, witnesses may become unavailable or their memories may fade. If the witnesses support the prosecution, its case will be weakened, sometimes seriously so." Barker, 407 U.S. at 521. Here, the risk is not only fading memory. Congress has given each victim in this case "[t]he right to be reasonably protected from the accused." 18 U.S.C. § 3771(a)(1). An eight-month delay works against that right.

2. Victims' rights

The Crime Victims' Rights Act guarantees victims "[t]he right to proceedings free from unreasonable delay," 18 U.S.C. § 3771(a)(7), and directs that "the court shall ensure that the crime victim is afforded" that right, id. § 3771(b)(1). Where the victim is deceased, family members "may assume the crime victim's rights." Id. § 3771(e)(2)(B). R.W. was killed six years ago. His family has waited through the investigation, the indictment, and two continuances, each almost a year long. The same is true of the enterprise's other victims, including Victim-1 and the victims of the charged extortion and fraud schemes. "[I]n the administration of criminal justice, courts may not ignore the concerns of victims." Slappy, 461 U.S. at 14.

3. Material witnesses, in-custody witnesses, and fifty witnesses overall

At least one material witness has lived and will continue to live under court-ordered conditions since April 2026. (Dkts. 293-299, 311.) He, like any other material witness, is not accused of anything. The material witness statute contemplates that such witnesses will be held only as long as necessary to secure their testimony. See 18 U.S.C. § 3144. The application would extend those restrictions on non-parties by another eight months without mentioning them. The current material witness was so designated because of fear, and the government warned in April that this "constraint on liberty . . . will be extended if the trial is continued." (Dkt. 310 at 13 n.4.) It was. The application would extend it again.

The five in-custody witnesses present their own problem: their production depends on writs, facility coordination, and release and transfer dates that do not wait on this Court's calendar. And the remaining witnesses -- roughly fifty in all, including Nevada law enforcement -- have been scheduled around February 16. Those include one who requires international travel and immigration coordination, along with some of the most well-known individuals in America.

### C. The *Flynt* Factors Do Not Support an Eight-Month Continuance

#### 1. The asserted need has already been accounted for

The application's lead argument is volume: 1,121,068 pages, 29,612 audio and video files, and 218.94 gigabytes. (App. at 7-8.) This Court has heard that argument. In April, it accepted it, found the case complex, and moved trial ten months to February 16, 2027. (Dkt. 329 at 2-3.) The February date already accounts for the complexity the application describes. Nothing about the volume of discovery is new except the counsel reading it.

Nor is the volume the right measure of the work. The defense does not need to try the case against 29,612 recordings. It needs to meet the government's case, and it has had the government's case -- the exhibit list since March 25 and the witness list since March 9 -- for nearly seven months. The application itself concedes that the exhibit list identifies "roughly 200 recorded calls." (App. at 7.) The Court's April order already set aside the large body of material the government has said it will not offer. (Dkt. 329 at 2.) And counsel's own declaration acknowledges that "[m]any other recordings are voicemails or fragments." (Brown Decl. ¶ 12.) Nor does counsel have to listen blind. Draft transcripts and linesheets summarizing the intercepted calls, often verbatim, have been available since the

first production, and the government has produced transcripts of recorded calls. (Dkt. 310 at 21 (citing USAO_1006717-1006851 and USAO_1010476-1010498).) Defendant's prior counsel filed its own transcripts as part of the hundreds of exhibits to the pretrial motions and motions in limine. And prior counsel represented at their last hearing that they would produce their work product to new counsel.

Much of that volume has no bearing on trial at all. Productions 2 through 6 (USAO_046248 through USAO_595607) consist entirely of returns to orders under 18 U.S.C. § 2703(d). None of that material is content. None of it is relevant to trial, and the government will not seek to admit any of it. Yet those five productions account for 549,360 of the 1,147,865 Bates numbers produced -- almost half (47.9%) of the total discovery. The recordings are largely the same. By the defense's own count, the roughly 200 calls on the government's trial exhibit list are less than one percent of the 29,612 audio and video files produced. (App. at 7-8.) Many of the rest are consensual and jail calls, almost none of them relevant, and more than 5,000 are intercepted calls on the phones of two people who are not defendants in this trial. (Dkt. 310 at 20-21.)

And new counsel also did not start from zero. They received prior counsel's file the week after appointment, and previous counsel told this Court that it would provide the entirety of its work product to new counsel. (Brown Decl. ¶ 4.) Prior counsel litigated this case for eighteen months, including the suppression motions the application now wants to postpone. And as previous counsel told this Court, representation did not cease due to a breakdown in communication or disagreements in litigation or strategy -- so there

need not be a drastic change in tactic. Moreover, six codefendants' counsel have been preparing since 2025, and the declaration confirms that transcription work is being "shared across defense teams." (Id. ¶ 12.) That work presumably exceeds the transcripts prior counsel already filed with this Court in support of its motion practice -- transcripts that the defense believes impeach the government's witness, likely to be the primary, if not entire, focus at trial, as it has been pretrial. The defense's comparison of "thirteen months from appointment" to "a case the government spent four years investigating" (App. at 5) is not the accurate measure. This is to say nothing of the various counsel and paralegals that defendant purports to be working on his behalf that have not changed.

Nor should the Court rely on defense counsel's unspecific claim that defendant's "ability to review discovery in custody has been limited," undated claim that defendant needed a replacement hard drive of discovery, and common claim of needing a team member to review protective order materials. (Id. ¶ 8.) In January 2026, the Court held an hour-and-a-half long hearing with Bureau of Prisons' staff, defendant, and his then-counsel after he submitted a declaration about his ability to review unprotected and protected discovery, including the seizure of his USB. (Dkts. 162, 168.) In that declaration, defendant disclaimed any difficulties in reviewing discovery as a basis for a continuance: "It is important to me that the Court understand that I am not filing a motion and I am not requesting a continuance or additional delay in these proceedings. In fact, absent being granted bond, I will always assert my speedy trial rights." (Dkt. 162 at 1.)

The remaining reasons are smaller still.

- The application states that "the defense lost both of its paralegals." (App. at 4.) The declaration says only that they "will be leaving," that a replacement "with experience coordinating discovery in capital cases"[6] has been identified, and that it "will take an additional week to get the new paralegal authorized and onboard." (Brown Decl. ¶¶ 16-17.) A one-week staffing gap does not support an eight-month continuance anyway.
- Defense counsel's trial schedule does not require a continuance either. Mr. Brown has United States v. Horn, which is a two-week trial set for January 25, 2027. (App. at 8.) It should conclude before February 16 if it even sticks and does not resolve. His other trial, United States v. Armstead, is set for March 18, 2027, with no trial estimate. (Id.)[7] Both dates were on counsel's calendar on September 25, 2026, when counsel accepted appointment in a case with a trial date set five months earlier. Ms. Luem's New Mexico matters are motion hearings on four dates between November and February. (App. at 9.) The remaining item is "a planned trip abroad from March 14 to March 18, 2027." (Id.) Lloyd rejected a continuance resting on counsel's scheduled vacation and on unverified accounts of other lawyers' calendars, without inquiry into

---

[6] As this Court is aware, this is not a capital case.

[7] A stipulation for proposed trial groups is pending with that court. United States v. Armstead, et al., 2:25-cr-00651-JFW, at Dkt. 465. Even if Mr. Brown's client is placed in the first trial group and that case does not resolve and is not continued -- all speculative at this point -- Mr. Brown will still be done with defendant's trial, as the government's case-in-chief is estimated to last only 15 days. (See Dkt. 384.)

"whether any of counsel's plans could be changed." 125 F.3d at 1269-70. And Ms. Luem has not submitted a declaration; her calendar is described only through Mr. Brown's.

If counsel's caseloads genuinely cannot absorb this trial, the answer is additional CJA resources, as defendant requested in January 2026 to address these very claims (Dkt. 162 at 11 ¶ 50), and which the government does not object to. However, even counsel's own declaration negates that premise, as "[c]ounsel has arranged the work in this case around" their other obligations; while "they reduce the hours available to this case before February," nowhere does counsel say that they cannot try defendant's case in February. (Brown Decl. ¶ 18.)

2. <u>The application does not show that eight months is what the work requires</u>

The application says that "[e]ight months is what that work requires, measured against the hours counsel actually have." (App. at 12.) The declaration then lists categories of work -- review, transcription, subpoenas, interviews, experts, motions, trial preparation -- that describe every complex criminal trial, and then promises "a detailed work plan" at some later status conference. (Brown Decl. ¶ 24.) <u>Lloyd</u> requires the Court to determine "how long a delay is actually required." 125 F.3d at 1269. The application gives the Court nothing from which to make that determination.

The Ninth Circuit treats defendant's burden to show prejudice from denial of a continuance as "heavy": "When a continuance is requested to obtain witnesses, the accused must show who they are, what their testimony will be, that the testimony will be competent

and relevant, that the witnesses can probably be obtained if the continuance is granted, and that due diligence has been used to obtain their attendance on the day set for trial." United States v. Gonzalez-Sandoval, 894 F.2d 1043, 1051 (9th Cir. 1990) (quotation omitted). Prior counsel may have been able to do so in their in camera declarations in April (Dkt. 329 at 3), but this application falls woefully short (see Dkt. 166 at 5 ("Based on the record before it, the court cannot conclude that another four months would be useful to the moving defendants, or how likely it will be that they will accomplish some unidentified objective were they to be granted the requested continuance."). See, e.g., United States v. Fabro-Miske, Case No. 19-cr-00099-DKW-12, 2023 WL 5020849, at *2-3 (D. Haw. Aug. 7, 2023) (second factor weighed against the defendant because her request for a continuance "due to the complexity of the case, the need to review discovery, and the limited time remaining before the start of trial" was insufficient to show "something more than the convenience of additional time").

3. A continuance would impose real costs on the Court, the government, and its witnesses

The application asserts that "[t]he government's witnesses can be rescheduled." (App. at 12.) The truth is much more complicated:

- So far, one is a material witness under court-ordered conditions. (Dkts. 293-299, 311.) Rescheduling means eight more months of restrictions on someone charged with nothing.
- At least five are in custody. Almost none are in this district. Their availability turns on writs, facility logistics, and release and transfer dates.

- One is a cooperating witness whom defendant is charged with targeting from custody. (Dkt. 377 at 74-75.)
- The government's trial team is committed to other trials in April, May, June, and July 2027 -- dates selected based on defendant's trial date. A continuance does not simply slide this trial to a convenient open month. It pushes a case with roughly fifty witnesses into the back half of 2027 -- more than thirty months after indictment, for a detained defendant who has demanded trial since the beginning.
- This is the second time the government has had to rebuild its trial schedule. For the May 5, 2026 date, it had subpoenaed approximately forty witnesses, arranged international travel for one, and coordinated the transfer of in-custody witnesses, including some in protective custody. (Dkt. 310 at 9, 28.) It unwound those arrangements when the Court moved the trial, and rebuilt them around February 16.

The Ninth Circuit has affirmed the denial of "[a] continuance [that] would have resulted in inconvenience to the government which planned to call over 70 witnesses, some of which were either in prison or in the Witness Protection Program," despite that it gave defense counsel only 82 days to prepare. United States v. Shirley, 884 F.2d 1130, 1135 (9th Cir. 1989). This Court should apply that logic here to defense counsel who have 144 days to prepare

themselves, propped up by the at least 554 days defendant had before new counsel's appointment.[8]

The Court's own calendar would absorb costs as well. Six hearings are set between October 28 and December 9, 2026, including a potential Daubert evidentiary hearing and the procedures for a time-qualified venire and juror questionnaire. (App. at 2.) Each was set to keep the February trial on track. As the Court explained in January, it "presides over hundreds of cases at a time and schedules trials well in advance," and continuing a multi-week trial "would put additional pressure on the trials scheduled after this action." (Dkt. 166 at 6.)

4. Defendant has not shown prejudice from denial -- and he has told the Court that delay is the prejudice

The application predicts that counsel "will argue suppression and in limine motions without the full record." (App. at 13.) But the suppression record is fixed. The Title III motions turn on the affidavits and orders that were before the issuing judge, and they were fully briefed by prior counsel -- multiple times over now. In fact, the effectively identical suppression motion was fully argued by prior counsel. (See Dkt. 244 at 8-9 (defendant characterizing everything that is the "same" for the motions); Dkt. 422 (minutes of first oral argument on suppression motion).) The in-limine motions are likewise briefed.[9] Generalized concern about readiness, offered

---

[8] Defendant's representation on this matter predated the filing of criminal charges -- at least as far back as June 29, 2023, meaning he has had some preparation for over three years now. (Compl. ¶ 126; see also id. ¶ 187 (additional information about defendant's awareness of his criminal investigation).)

[9] Since defense counsel seeks to vacate the in-limine hearings, if the Court is considering the continuance, which is based in part

*(footnote cont'd on next page)*

four weeks into an appointment with four months remaining before trial, is not the concrete prejudice Flynt requires. 756 F.2d at 1359. Meanwhile, defendant himself has identified the prejudice he cares about, which is the delay.

The application's reliance on Ungar does not change the analysis. (App. at 13.) The Supreme Court has since made clear that only "an unreasoning and arbitrary" insistence on expedition offends the Sixth Amendment. Slappy, 461 U.S. at 11-12. Holding a detained, objecting defendant to a trial date set six months ago, on the strength of a complexity finding and to-do list already made, is neither.

### D. The Court Should Not Vacate the Motion Schedule in Any Event

Even if the Court were inclined to grant some continuance, it should deny the request to vacate "all other hearings now on this Court's calendar." (App. at 2.) The application says the new schedule "should come soon . . . so that the motions keep moving while the defense prepares." (Id. at 12.) Vacating every hearing does the opposite.

The motions set for October 28, November 4, November 18, December 2, and December 9 are briefed, and the Title III hearing before Judge Vera has already been continued once at new counsel's request. (Dkts. 451, 452.) Hearing them now narrows the trial, informs both sides' preparation, and avoids yet another round of

---

on the asserted need to "respond to the pending motions in limine and Daubert challenges" (Brown Decl. ¶ 23), the Court should consider instead taking the motions in limine under submission, which would give the defense even more time to focus on trial preparations. See United States v. Davis, 860 F. App'x 533, 535 (9th Cir. 2021) ("District courts are not required to hold hearings on motions in limine.").

briefing. The hearing on the severance motions should be reset promptly as well.

The application also asks the Court to vacate hearings on motions brought by and against six codefendants without stating any codefendant's position. The Court "must conduct an appropriate inquiry to determine whether the various parties actually want and need a continuance." Lloyd, 125 F.3d at 1269.

If the Court is inclined to vacate all hearings, however, it should not feel compelled to reset hearings on any motion lacking a reply -- given the defense clearly did not have anything more to say. Cf. Civ. L.R. 7-15 ("The Court may dispense with oral argument on any motion except where an oral hearing is required by statute, the F.R.Civ.P. or these Local Rules."). The only pretrial motions with replies that remain pending before this Court are: (1) defendant's severance motions (Dkts. 181, 182); (2) defendant's motion to suppress cell-site location information, which this Court took under submission after a hearing (Dkt. 198, 405, 422); and (3) codefendant Aflleje's motion to dismiss (Dkt. 371). And "[d]istrict courts are not required to hold hearings on motions in limine." Davis, 860 F. App'x at 535.

**E. Alternatively, Any Relief Should Be Narrow and Supported by Specific Findings**

If the Court is inclined to grant any relief, the government respectfully requests that the Court: (1) first obtain defendant's personal position on the record; (2) keep the October 28 through December 9 hearings, and the November 2 hearing before Judge Vera, on calendar; (3) limit any continuance to the shortest period the record specifically supports, with findings tied to the facts as of the date

of the order, see Lloyd, 125 F.3d at 1268; and (4) find expressly that any resulting delay is attributable to the defense, Brillon, 556 U.S. at 90-91.

**V. CONCLUSION**

Defendant has been detained since March 2025. He purports to have asked for a speedy trial at every opportunity. The Court already found the case complex and gave the defense almost two years to prepare for it. The victims, the witnesses, and the public have waited long enough. The application should be denied, and trial should proceed on February 16, 2027. In any event, the government respects a hearing at the earliest possible convenience to resolve any uncertainty.

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for plaintiff United States of America, certifies that this brief contains 5,064 words, which complies with the word limit of L.R. 11-6.1 and the word limit set by the Court's standing order dated October 1, 2024.